**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MATTEO GUTTER SYSTEMS, INC.,** | ) ) ) | Case No. 1:09CV1330 |
| **Plaintiff,** | ) ) | **Judge Dan Aaron Polster** |
| vs. | ) ) | |
| **MILLENIA HOUSING MANAGEMENT LTD.,** *et al.*, | ) ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendants.** | ) | |

Before the Court are the Motions to Dismiss Plaintiff's RICO claim filed by Defendants Charles Sinito (*ECF No. 18*) and Delmo Orlandi (*ECF No. 20*). For the following reasons, the Motions to Dismiss are **DENIED**.

**I.**

For purposes of a motion to dismiss, the facts, as alleged by the plaintiff, are assumed to be true. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). On June 2, 2006, Plaintiff Matteo Gutter Systems ("MGS" or "Plaintiff") entered into a contract with Defendant Millenia Housing Management ("MHM"), which was represented by Defendant Charles Sinito, an MHM officer and construction manager. *ECF No. 1* at ¶¶ 12-13. Under the

terms of the contract, MHM was to pay MGS $168,000 for gutter and siding construction services.[1]  *Id*. at ¶¶ 13-15.  Plaintiff alleges that, after the gutter and siding services were performed, Sinito purposefully withheld the payment of $168,000 to MGS.  *Id*. at ¶¶ 14, 20.

On June 28, 2007, Kenneth Matteo, owner of MGS, met with Defendant Michael Antonelli.  *Id*. at ¶ 22.  Antonelli told Matteo that he had heard that MGS had not been paid by MHM.  *Id*.  Antonelli then offered MGS a loan of $150,000 in cash contained in Antonelli's suitcase.  *Id*.  Antonelli told Matteo that the $150,000 was obtained from an illegal gambling operation and was not "useful in cash form."  *Id.* at ¶¶ 37-38.  Antonelli wanted to conceal the source of the illegal gambling money by having MGS pay back the $150,000 loan, with a monthly interest rate in the teens, in the form of construction services to Antonelli.  *Id*. at ¶¶ 23-24, 29.  MGS declined Antonelli's offer a week later.  *Id*. at ¶ 27.

Meanwhile on February 9, 2008, Defendant Delmo Orlandi asked Matteo for a meeting concerning an ongoing construction job.  *Id*. at ¶ 31.  During the meeting Orlandi, who knew that Sinito owed MGS $168,000, offered MGS "protection and collection services" against Sinito in exchange for money.  *Id*. at ¶¶ 30-31.  Matteo rejected Orlandi's offer.  *Id*. at ¶ 32.

Plaintiff alleges that Sinito, Antonelli, and Orlandi worked together to carry out a scheme to force MGS to accept extortionate credit while laundering the illegal gambling proceeds.  *Id.* at ¶¶ 14, 20, 52.  Sinito purposefully withheld the payment of $168,000 in order to weaken MGS such that it would be forced to accept the loan of $150,000 from Antonelli.  *Id*. at ¶ 54.  Orlandi was involved in the scheme by attempting to obtain additional money from MGS for

---

[1] MGS also contracted to perform interior construction work for MHM.  *Id.* at ¶ 13.  The interior construction work is not relevant to the RICO claim Defendants seek to dismiss in the pending motions but is a basis for other causes of action in Plaintiff' complaint.  *Id* at ¶ 13 n.2.

"protection services" against Sinito. *Id*. at ¶ 57.

On June 10, 2009, Plaintiff filed the current complaint, bringing a cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), alleging that Sinito, Antonelli, and Orlandi violated 18 U.S.C. §1962(d). Plaintiff also brought various state causes of action against Sinito, Antonelli, Orlandi, MHM and another defendant, including for breach of contract, tortious interference with MGS' business relations, unjust enrichment, breach of fiduciary duty, and breach of the duty of good faith and fair dealing. On August 10, 2009, Sinito filed his Motion to Dismiss Plaintiff's RICO claim now pending before the Court. *ECF No. 18*. On August 26, 2009, Orlandi filed his motion to dismiss Plaintiff's RICO claim also pending before the Court.[2] *ECF No. 20*.

## II.

RICO, which was enacted by Congress to combat organized crime, *Beck v. Prupis*, 529 U.S. 494, 496 (2000), creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. §1964(c). Under 18 U.S.C. §1962(d) it is unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Plaintiff alleges that Defendants conspired to violate 18 U.S.C. §1962(c) which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

---

[2]On September 15, Defendant Antonelli filed a motion to dismiss Plaintiff's complaint on similar grounds as the instant motions. *ECF No. 26*. Though the Court will not rule on Antonelli's motion until it has been fully briefed, for the reasons discussed in this order, the Court is doubtful that it will grant Antonelli's motion. On September 16 Plaintiff moved to dismiss Sinito's counterclaims for abuse of process and frivolous conduct. *ECF No. 30*. Similarly, though the Court will wait until briefing is completed, based on a preliminary examination, the Court is doubtful that it will grant Plaintiff's motion to dismiss.

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Defendants Sinito and Orlandi present two bases for dismissing Plaintiff' RICO claim. First, Defendants argue that Plaintiff's alleged injury was caused by a breach of contract and not by an overt act of racketeering, commonly referred to as a RICO "predicate act." *Beck*, 529 U.S. at 497 n.2. That is, Plaintiff has not alleged that the acts that caused its injuries, Sinito withholding payment of $168,000 and Orlandi offering protective services, are racketeering activity "of a tortious character" that are "independently wrongful under RICO." *Id*. at 505-06. Second, they contend that Plaintiff has not complied with the requirements of 18 U.S.C. §1964(c) because it has not alleged that the acts in question proximately caused its injury. *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612 (6th Cir. 2004). Sinito and Orlandi contend that Plaintiff's injury of $168,000 resulted solely from a breach of contract and not from Defendants' participation in a conspiracy to offer MGS an extortionate loan and protection services.

Plaintiff contends and the Court agrees that Defendants Sinito and Orlandi oversimplify and mischaracterize Plaintiff' RICO claim as an artificially inflated breach of contract claim. Sinito's and Orlande's motions to dismiss the RICO claim are therefore denied. First, Plaintiff has sufficiently alleged acts that constitute racketeering activity and are therefore independently wrongful under RICO. Plaintiff alleges that Sinito's predicate RICO act was conspiring to make an extortionate extension of credit. Under 18 U.S.C. §1961(1)(B), racketeering activity is defined, in part, as "any act which is indictable" under certain provisions of title 18 of the United States Code, including "sections 891-894 (relating to extortionate credit

transactions)." 18 U.S.C. §892 states that "[w]hoever makes any extortionate extension of credit, or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both." An extortionate extension of credit is "any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of another person." 18 U.S.C. §891(6).

Plaintiff's allegations that Antonelli offered a $150,000 loan, that "Matteo reasonably believed that one or more extensions of credit by the Defendants had been collected or attempted to be collected by extortionate means in the past" and that Matteo "reasonably believed the Defendants had a reputation for the use of extortionate means to collect extensions of credit or to punish the non-repayment thereof" satisfactorily plead an extortionate extension of credit. *ECF No. 1* at ¶ 25. Plaintiff has also alleged that Sinito actively participated in a conspiracy to extend the extortionate credit. Plaintiff's allegations, if assumed to be true, establish that Sinito had no intention of paying $168,000 and that the purpose of Sinito's refusal to pay was to enable Antonelli to extend the extortionate line of credit.

The RICO predicate act that Plaintiff alleges Orlandi committed was extortion. The definition of racketeering activity under 18 U.S.C. §1961(1)(A) also includes "any act or threat involving ... extortion ... which is chargeable under State law and punishable by imprisonment for more than one year." Under R.C. §2905.11(2), Ohio's extortion provision, "[n]o person, with purpose to obtain any valuable thing or valuable benefit to induce another to do an unlawful act, shall ... [t]hreaten to commit any offense of violence." Violation of R.C.

§2905.11 is a third degree felony, which under R.C. §2929.14(A)(3) carries a possible prison term of one, two, three, four, or five years. *State v. Dutton*, No. 03-69, 2004 WL 3090177, at *1 (Ohio Ct. App. Dec. 30, 2004). Because Plaintiff's allegations that Orlandi attempted to obtain a monetary benefit by "implicitly and explicitly threatening violence and harm if MGS did not pay him money for 'protection services,'" *ECF No. 1* at ¶ 33, establish a claim of extortion under R.C. §2905.11(2), and because violation of R.C. §2905.11(2) is punishable by imprisonment of more than one year, Plaintiff has established that Orlandi's activities constitute racketeering activity.

Second, Plaintiff has sufficiently pled that Sinito's and Orlandi's actions proximately caused the injuries for which Plaintiff is seeking damages. Plaintiff's complaint unambiguously alleges that the $168,000 in damages based on the RICO claim were proximately caused by the conspiracy to extend extortionate credit. Specifically, but for Sinito's actions in deliberately withholding $168,000 so that Plaintiff would be forced to accept Antonelli's offer of a $150,000 loan, Plaintiff would not have suffered a $168,000 injury. Moreover, because "co-conspirators in a RICO enterprise should be held joint and severally liable for any proceeds of the conspiracy" Orlandi's actions can be considered to have proximately caused Plaintiff's $168,000 injury. *See U.S. v. Corrado*, 227 F.3d 543, 553 (6th Cir. 2000).

### III.

Thus, the facts as alleged in Plaintiff's complaint sufficiently state a RICO claim. However, the Court notes that Plaintiff is entitled to judgment on the RICO claim only if it can prove its theory that the sole purpose of Sinito withholding payment from MGS was to facilitate the alleged RICO scheme. If Plaintiff cannot meet its burden, the Court will likely grant

summary judgment for Defendants on the RICO claim.

For the reasons discussed, *supra*, the Motions to Dismiss Plaintiff's RICO claim, filed by Defendants Charles Sinito (***ECF No. 18***) and Delmo Orlandi (***ECF No. 20***), are hereby **DENIED**.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster     October 2, 2009*
**Dan Aaron Polster**
**United States District Judge**